**Bernard STOKES et al., Plaintiffs,**

v.

**UNITED STATES of America, IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

**No. 74 Civ. 1022 CLB.**

United States District Court,
S. D. New York.

Jan. 9, 1975.

Legal Aid Society, by Julius C. Biervliet, John E. Kirklin, Morton B. Dicker, and Anita Fisher Barret, New York City, for plaintiffs.

Paul J. Curran, U. S. Atty., by Mary P. Maguire, Sp. Asst. U. S. Atty., New York City, for defendants.

Association of the Bar of the City of New York, by Angelo T. Cometa, New York City, Association of Immigration and Nationality Lawyers, Inc., by Stanley Mailman, New York City, Puerto Rican Bar Association, Inc., by Antonio C. Martinez and Vicki Jo Cohen, New York City, amicus curiae.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiffs seek a preliminary and permanent injunction and a declaratory judgment declaring 8 U.S.C. §§ 1154, 1225 and 1357, as well as the regulations found in 8 C.F.R. §§ 103.2 and 204.1(a), and Immigration and Naturalization Form I–130 ("I–130") promulgated thereunder, unconstitutional on various grounds as allegedly violative of Bill of Rights liberties.

Plaintiffs Bernard Stokes and Charles Cook are citizens of the United States. Both Stokes and Cook met women who were citizens of Guyana, visiting the United States on non-immigrant visas. The two couples were each married in civil ceremonies. Shortly thereafter, Stokes and Cook each applied for classification of his wife as an "immediate relative" and thereby exempt from the annual quota restrictions on immigration. Both couples underwent investigations by Immigration and Naturalization Service ("INS") officers. The procedures followed are challenged in this action.

During the investigation of his application, Stokes withdrew his request in behalf of his wife under facts claimed to have constituted compulsion by INS officers; the Stokes' application was then referred to INS's criminal investigators where it now remains under investigation. The Cook application also resulted unfavorably to plaintiff, but the precise cause is pleaded as unknown. Cook claims he did not understand the documents he signed, which apparently withdrew the application.

The plaintiffs also seek to maintain this suit as a class action on behalf of all United States citizens and their alien spouses residing in the United States who have filed, with the New York District Office of INS, Form I–130, petitions for designation as an "immediate relative", with consequent preferential immigration status.

I

Jurisdiction is premised on several grounds. It is alleged that § 279 of the Immigration and Nationality Act, 8 U.S.C. § 1329, confers jurisdiction upon this Court in a suit seeking declaratory and injunctive relief against the enforcement of a provision of that subchapter. Although the suit is not a "cause . . . arising under" those provisions of the statute in a strict sense, nonetheless, it appears that jurisdiction is conferred by that statute. See Faustino v. Immigration and Naturalization Service, 302 F.Supp. 212 (S.D. N.Y.1969), aff'd, 432 F.2d 429 (2d Cir. 1970), cert. denied, 401 U.S. 921, 91 S.Ct. 909, 27 L.Ed.2d 824 (1971). Jurisdiction is also based on 28 U.S.C. § 1331, as a civil action "wherein the matter in controversy exceeds the sum of $10,000 . . . and arises under the

Constitution, laws, or treaties of the United States." Plaintiffs each seek $15,000 compensatory damages and $100,000 punitive damages for the emotional pain, suffering and humiliation resulting from the alleged unconstitutional acts of the defendants. Jurisdiction lies under this statute. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). This Court need not determine plaintiffs' other and additional jurisdictional contentions.

■ The Government contends that this Court lacks subject matter jurisdiction because the plaintiffs have failed to exhaust their administrative remedies. But plaintiffs attack the constitutionality of the administrative procedure which the Government insists must be exhausted. Furthermore, this controversy arises from INS's inquiry into the *bona fides* of the plaintiffs' marriages, which necessarily involves a factual determination. Plaintiffs' principal grievance is that this administrative adjudication is conducted without opportunity for a fair hearing. Further pursuit of the administrative procedure would not give the plaintiffs a *de novo* hearing. Additionally, the validity of the entire I–130 procedure could not be challenged in the immigration proceedings. This Court fails to see how this administrative remedy can be considered adequate for purposes of the exhaustion rule. See Finnerty v. Cowen, 508 F.2d 979 (2d Cir., 1974). Deferring to the immigration authorities in this instance would not yield a more complete evidentiary record. Finally, plaintiffs seek compensatory and punitive damages, remedies which could not be awarded in the administrative process. Even if immediate relative status was granted on administrative appeal, the cause of action for prior acts of INS officers would not be mooted. See Plano v. Baker, 504 F.2d 595 (2d Cir. 1974).

This Court has subject matter jurisdiction without regard to any claimed necessity to exhaust administrative proceedings.

## II

■ Plaintiffs move to convene a three-judge district court, pursuant to 28 U.S.C. § 2282, claiming that this is a suit for an "injunction restraining the enforcement, operation or execution of [an] Act of Congress for repugnance to the Constitution of the United States . . .." In determining whether to convene a statutory three-judge court, the Court is "limited to determining whether the constitutional claim raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 81 L.Ed.2d 794 (1962). See Nieves v. Oswald, 477 F.2d 1109, 1111 (2d Cir. 1973).

In their complaint, plaintiffs attack 8 U.S.C. § 1154 and the applicable administrative regulations as being violative of their Fifth Amendment rights of procedural due process. Specifically, it is alleged that the adjudicative and investigatory hearings fail to meet the standards required by the Constitution in that there is no opportunity for confrontation or cross-examination of adverse witnesses, the applicant's counsel is relegated to an ineffective role, and minutes of the hearings are not transcribed.

Section 204 of the Immigration and Nationality Act, 8 U.S.C. § 1154 does not prescribe the procedures to be followed in the determination of eligibility for "immediate relative" status. Rather, that statute delegates to the Attorney General the authority to prescribe by regulation the information required. The statute further provides that "[a]fter an investigation of the facts in each case," the Attorney General shall determine whether preferential status should be granted. The application pro-

cedure is governed by 8 C.F.R. §§ 103.2, 204.1(a) and 204.2(a), which provide for the use of Form I–130. Neither the enabling statute nor the governing regulations provides for an evidentiary hearing.

The Supreme Court has held that due process requires some form of notice and hearing in administrative adjudications which may result in the denial of privileges conferred by the Government. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). See also Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); Hagopian v. Knowlton, 470 F.2d 201 (2d Cir. 1972). Seemingly, the interests of the plaintiffs are among those protected by the Fifth Amendment and encompassed in its protection from deprivation of liberty without due process of law. In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court quoted with approval the following language from Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042:

> "While this court has not attempted to define with exactness the liberty . . . guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to . . . marry, establish a home and bring up children . . . ." 408 U.S. at 572, 92 S.Ct. at 2706.

Aliens in the United States have rights which are protected by the Constitution. Au Yi Lau v. United States Immigration and Naturalization Service, 144 U.S. App.D.C. 147, 445 F.2d 217, cert. denied, 404 U.S. 864, 92 S.Ct. 64, 30 L.Ed.2d 108 (1971). See also United States v. Tos-canino, 504 F.2d 1380 (2d Cir. 1974). Both the citizen-plaintiffs and their alien spouses have valuable rights at stake in this suit. Cf. Encisco-Cardozo v. Immigration and Naturalization Service, 504 F.2d 1252 (2d Cir. 1974). They raise a substantial constitutional issue concerning the validity of this procedure. The bases for their attack are not foreclosed by prior decisional law. Cf. Maggiore Bakery, Inc. v. Esperdy, 238 F.Supp. 374 (S.D.N.Y.1964); Lechich v. Rinaldi, 246 F.Supp. 675 (D.N.J. 1965).

Although the constitutional issue raised is substantial and injunctive relief is sought, issues raised by the plaintiffs' complaint do not come within 28 U.S.C. § 2282. The procedure under constitutional attack here is not created by statute. It is a procedure that has been selected by the Attorney General under powers delegated to him by statute. Section 204 of the Act does not prohibit the Attorney General from promulgating regulations which require a transcribed evidentiary hearing, adversarial procedures and the making of fair and detailed findings of fact and conclusions.

Where the procedure under constitutional attack is created by regulation, the suit is not considered to be a suit for an "injunction restraining the enforcement, operation or execution of any Act of Congress" for purposes of 28 U.S.C. § 2282. William Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (1939); Sardino v. Federal Reserve Bank of New York, 361 F.2d 106 (2d Cir.), cert. denied, 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130 (1966). In Mills v. Richardson, 464 F.2d 995 (2d Cir. 1972), the Court vacated the dismissal of a complaint directed essentially at the failure of the regulations to provide for a prior evidentiary hearing in the recoupment of Social Security overpayments, but noted that, on remand, it would not be necessary to convene a three-judge court. See also, O'Neill v. Dent, 364 F.Supp. 565 (E.D.N.Y.1973).

■ Plaintiffs also attack the constitutionality of 8 U.S.C. §§ 1154, 1225, and 1357, and 8 C.F.R. §§ 103.2 and 204.1 (a) and Form I–130 promulgated thereunder, as violative of their Fourth Amendment rights. In particular, the plaintiffs complain that they were fingerprinted, photographed, required to produce the contents of their pockets, and were frisked by immigration officers in violation of the constitutional prohibition against unreasonable searches and seizures. The facts surrounding the use of these techniques in processing the plaintiffs' applications, and whether plaintiffs consented effectively to these procedures, are in controversy; however, for purposes of this motion, the allegations of the complaint are deemed to be true. Goosby v. Osser, 409 U.S. 512, 521 n. 7, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); Nieves v. Oswald, *supra.*

The statutes aforementioned vest broad investigatory powers in officers of the INS; among these are the powers to administer oaths, take evidence and conduct searches under appropriate circumstances. Section 287 of the Act, 8 U.S.C. § 1357, which permits searches, is not a boundless grant of authority. In Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the Supreme Court declined to hold this statute unconstitutional. It did find a search conducted pursuant thereto which resulted in a criminal prosecution in violation of the Fourth Amendment, and suppressed the result of the search.

■ The Government characterizes the INS procedure as an administrative inspection which is not subject to the same standards as police searches. See United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). The Government seeks to justify these procedures as necessary to the proper identification of I–130 applicants and their spouse-beneficiaries. See Winters v. Miller, 446

F.2d 65 (2d Cir. 1971); Thom v. New York Stock Exchange, 306 F.Supp. 1002 (S.D.N.Y.1969), aff'd per curiam sub nom., Miller v. New York Stock Exchange, 425 F.2d 1074 (2d Cir.), cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed. 2d 64 (1970). The Government argues that these procedures and the search of personal effects often reveal the absence of a *bona fide* marriage. The use of these procedures for identification purposes may not remove them from the purview of the Fourth Amendment. See Committee for G. I. Rights v. Callaway, 370 F.Supp. 934 (D.D.C.1974). There remains a substantial constitutional issue whether these procedures are reasonable and not unduly intrusive upon the values of privacy which the Fourth Amendment protects.

■ Although the constitutional challenge on Fourth Amendment grounds is substantial, again, its thrust is directed more properly at the regulations rather than the statute itself. The Government contends that the investigations are conducted pursuant to authority granted INS in 8 C.F.R. § 103.2, which provides in relevant part: "The Service may require the submission of additional evidence, including blood tests, may require the taking of testimony, and may direct the making of any necessary investigation." Accordingly, the determination of the constitutionality of the challenged INS procedures, which are an application of the Attorney General's regulations, may properly be made by a single District Judge. See William Jameson & Co. v. Morgenthau, *supra*; Sardino v. Federal Reserve Bank of New York, *supra.*

■ Plaintiffs next attack these statutes and regulations as violative of the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel. They contend that the procedures followed by the INS permit its agents to coerce self-incriminating statements during an investigation which has both civil and criminal implications. Plaintiffs suggest they were

entitled to be given *Miranda*-type warnings, and to have counsel present. Plaintiff's reliance on the Sixth Amendment appears misplaced since those rights attach "[i]n all criminal prosecutions." The I–130 interview proceeding is not the commencement of a criminal prosecution; by its very nature, it is investigatory. Nason v. Immigration and Naturalization Service, 370 F.2d 865 (2d Cir. 1967); Lavoie v. Immigration and Naturalization Service, 418 F.2d 732 (9th Cir. 1969), cert. denied, 400 U.S. 854, 91 S.Ct. 72, 27 L.Ed.2d 92 (1970). See also In re Groban, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957); Perrone v. United States, 416 F.2d 464 (2d Cir. 1969). There does not appear to be any basis for treating these issues as stating a substantial, independent constitutional issue. It may be that if the present hearing format is constitutionally infirm for due process reasons, the presence of counsel is required. Treating these grounds together with the due process issues, the Court declines to convene a three-judge district court to hear an attack that is of necessity directed primarily against procedures established solely by regulation.

Plaintiffs also attack the constitutionality of the determination of I–130 petitions on substantive grounds. They contend that §§ 201 and 204 of the Act, 8 U.S.C. §§ 1151 and 1154, are unconstitutional insofar as they constitute an invalid delegation of legislative authority devoid of substantive standards; that they are void for vagueness under principles of due process or unconstitutionally overbroad.

Plaintiffs contend that the Attorney General and the INS are without legislative authority to deny an I–130 petition. They view this delegation of authority in an overly restrictive manner. They contend that the INS's power is limited to denying petitions in those instances where an alien has *previously* been granted preference status by reason of a marriage entered into to evade the immigration laws. 8 U.S.C. § 1154(c). In all other instances, it is contended, the application must be granted and, if there has been a fraud, the INS may then institute deportation proceedings under the circumstances provided for in 8 U.S.C. § 1251(c). Alternatively, plaintiffs contend that the only spouses who may be denied preferential, immediate relative status are those who have been married by proxy and whose marriages have not been consummated. 8 U.S.C. §§ 1151(b), 1101(a)(35).

■ Plaintiffs' argument ignores wholly § 1154(b), which provides that:

"[a]fter an investigation of the facts in each case, . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title . . ., approve the petition . . .."

The Attorney General is charged with the responsibility to determine the *bona fides* of the application in the first instance. Under § 1154(e), even if an I–130 petition has been granted, an immigrant may be denied entry into the United States if he or she is found not to be entitled to the preferential classification. The Attorney General and the INS clearly have authority to deny fraudulent I–130 applications.

■ Plaintiffs contend that, if the Attorney General and INS do possess this authority, the statute is constitutionally defective in that it is void for vagueness. It is argued that by failing to define marriage for purposes of this statute, Congress delegated the authority to evaluate the *bona fides* of marriages impermissibly without substantive standards. Plaintiffs contend that neither the statutes nor their interpretation give sufficient guidance to individuals as to conduct prohibited or sanctioned by the federal standard. The term marriage is "of such common usage and acceptance that 'men of common intelligence' need not guess at its meaning." United Federation of Postal Clerks v. Blount, 325 F.Supp. 879, 884 (D.D.C.)

(three-judge court), aff'd without opinion, 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed. 2d 38 (1971); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "The common understanding of a marriage, which Congress must have had in mind when it made provision for 'alien *spouses*' in the War Brides Act, is that the two parties have undertaken to establish a life together and assume certain duties and obligations." Lutwak v. United States, 344 U.S. 604, 611, 73 S.Ct. 481, 486, 97 L.Ed. 593 (1953); United States v. Diogo, 320 F.2d 898 (2d Cir. 1963). See also Giannoulias v. Landon, 226 F.2d 356 (9th Cir. 1955). Persons about to be married would not base their decision whether or not to marry on this statute. The statutes are not constitutionally deficient because they fail to give applicants notice of proscribed conduct. The entire regulatory procedure is designed to discourage marriages of convenience, entered into with both eyes on the statute, and designed solely to confer the riches of preferential immigration status as a dowry. See Ferrante v. Immigration and Naturalization Service, 399 F.2d 98 (6th Cir. 1968). If there is a difficulty with these statutes, it lies in the manner in which they are applied in the INS's investigatory and hearing procedures. Questions of any fraudulent intent of the applicant and his or her alien spouse may not be susceptible of objective proof and often may be dependent on questions of credibility. The determination of such issues may require greater procedural safeguards than the Attorney General's regulations presently require.

■ Plaintiffs further assert that the I–130 procedure violates the constitutional prohibition against cruel and unusual punishment. Plaintiffs' Eighth Amendment attack is wholly without merit. Although deportation is a very serious possible consequence of the denial of an I–130 petition, deportation has been held not to constitute "punishment" and is therefore not within the purview of this Amendment. Buckley v. Gibney, 332 F.Supp. 790 (S.D.N.Y.), aff'd, 449 F.2d 1305 (2d Cir. 1971), cert. denied, 405 U.S. 919, 92 S.Ct. 946, 30 L.Ed.2d 789 (1972); Tsimbidy-Rochu v. Immigration and Naturalization Service, 414 F.2d 797 (9th Cir. 1969); Cortez v. Immigration and Naturalization Service, 395 F.2d 965 (5th Cir. 1968); Costanzo v. Tillinghast, 56 F.2d 566 (1st Cir.), aff'd, 287 U.S. 341, 53 S.Ct. 152, 77 L.Ed. 350 (1932). See also Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952); Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549 (1924).

Accordingly, the Court declines to convene a three-judge panel to determine the issues presented in this case.

### III

■ The plaintiffs have moved to have this action determined a class action. At this juncture, with basic facts in controversy and prior to meaningful discovery, it cannot be determined whether

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." F.R.Civ.P. 23(a).

Plaintiffs allege that they were subjected to unreasonable searches; the Government contends that the searches were with the plaintiffs' consent and that it is INS policy never to fingerprint or photograph citizen applicants without their consent. (Affidavit of Mr. Richard Guthrie, Supervisory Immigration Examiner, sworn to September 25, 1974, Exh. A to Affidavit of Mary P. Maguire). Similarly, plaintiffs complain of the coercive nature of the INS investigations and the line of questioning pursued which intruded upon their marital privacy and insulted their dignity. The

Government's response wholly controverts these allegations. (Affidavits of Immigration Officers, Exh. B, I, L and M to Affidavit of Mary P. Maguire, sworn to October 8, 1974).

The treatment of each citizen applicant and alien spouse has distinct qualities. Although the various *amici curiae* inform the Court that abusive investigations are common, the Court cannot find on these controverted facts that plaintiffs' claims are representative of a larger class. Even if the allegations are proven true at trial, and assuming these practices to be wide-spread, each applicant and alien spouse have had separate interviews which were not identical.

It does not appear at this time to be necessary to the plaintiffs' case or to the effectiveness of the relief sought that this suit be maintained as a class action. The Government has represented in its memorandum of law that it "would not persist in acting unconstitutionally should that be the . . . determination" of this Court.

> "[I]nsofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs." Galvan v. Levine, 490 F.2d 1255, 1261 (2d Cir. 1973). See also Finnerty v. Cowen, *supra*; Vulcan Society of New York City Fire Department v. Civil Service Commission, 490 F.2d 387 (2d Cir. 1973).

Furthermore, although the primary relief sought is a declaratory judgment and a prohibitory injunction, each named plaintiff seeks $15,000 compensatory damages and $100,000 punitive damages. Any recovery in damages would be dependent on the particular circumstances of the INS investigation of each member of the class. Plaintiffs' motion to have this suit determined a class action is deferred until such time as it is practicable to determine the propriety of a class action. This determination of class action status will await the conclusion of pre-trial discovery.

Plaintiffs' motion for a preliminary injunction is denied. On March 5, 1974, Judge Pollock of this Court signed an order to show cause staying the hearing on the deportation of plaintiff Faye Stokes, which has been continued on consent. There is no deportation proceeding pending or presently threatened against plaintiff Hilda Cook. It would be premature to grant such a provisional remedy in favor of members of the purported class other than these plaintiffs. There is no showing that other spouses of American citizens, threatened wrongfully with deportation, have been denied a stay by any Judge of this Court pending a plenary trial.

Nothing in this decision or the denial of preliminary injunctive relief is intended to imply any determination with respect to the ultimate merits of the case. Plaintiffs' pleading has stated a claim and raises substantial constitutional issues. Likewise, the United States has an important interest in regulating the exemptions from the immigration quotas. In fiscal 1973, 100,953 persons were granted immediate relative status, 67,288 of whom were granted this status because they were the spouse of an American citizen. 1973 Annual Report, INS. Only recently, the United States Attorney for this District obtained an indictment charging an attorney and two others with criminal activity in arranging for sham marriages to circumvent the immigration laws. Unquestionably, the interests of the Government and its citizens and their alien spouses require a prompt plenary trial of this action, which will be scheduled immediately following the completion of all necessary pre-trial proceedings.

So ordered.