**Stella MINATSIS, Ioannis Minatsis, Plaintiffs,**

**v.**

**Robert L. BROWN, et al., Defendants.**

**No. C–2–87–627.**

United States District Court,
S.D. Ohio, E.D.

May 1, 1989.

James B. Harris, Harris, McClellan, Binau & Cox, Columbus, Ohio, for plaintiffs.

Joseph E. Kane, Asst. U.S. Atty., for defendants.

## MEMORANDUM AND ORDER

HOLSCHUH, District Judge.

Plaintiffs bring this action for declaratory and injunctive relief, contending that section 204(h) of the Immigration and Naturalization Act, as amended by the Immigration Marriage Fraud Amendments of 1986, codified at 8 U.S.C. § 1154(h), is unconstitutional on its face and as applied. This matter is before the Court on defendants' motion to dismiss.

The material facts are not in dispute. Plaintiff Ioannis Minatsis, a Canadian citizen, entered the United States as a visitor on May 10, 1983. He married Irini Hiotis, a United States citizen, on July 11, 1983. On November 13, 1984 Irini applied for a relative visa on behalf of plaintiff. Ioannis and Irini subsequently separated, and plaintiff began living with his current spouse, plaintiff Stella Minatsis, in February 1985. On August 14, 1985, a child was born to plaintiffs. In May 1986, plaintiff Ioannis instituted divorce proceedings against Irini.

During the pendency of the divorce proceedings, on September 4, 1986, plaintiff Ioannis appeared before Judge Kramer in telephonic deportation proceedings, wherein plaintiff was charged with remaining in the United States beyond the six month visitors' limitation period. Plaintiff admitted the substance of the charge. Judge Kramer found plaintiff to be deportable and issued an order granting voluntary departure until February 4, 1987. It was understood by the parties and the judge that during the interim, plaintiff would complete his divorce proceedings, marry Stella, and reapply for an adjustment of status and a relative visa based on the new marriage.

Subsequent to the deportation hearing, Congress enacted the Immigration Marriage Fraud Amendments, effective November 10, 1986, which provided that an application for a relative visa based upon marriage to a United States citizen would not be approved if filed during the pendency of deportation proceedings. Plaintiff obtained his divorce from Irini on January 6, 1987 and married Stella six days later. Plaintiffs then filed an application for a relative visa and an adjustment of status to permanent resident. Judge Kramer remanded the matter to the Immigration and Naturalization Service for adjudication.

Plaintiffs' application was rejected on April 9, 1987 on the basis of the Immigration Marriage Fraud Amendments. Plaintiffs appealed to the Board of Immigration Appeals, alleging that the Immigration Marriage Fraud Amendments violated their constitutional rights and was arbitrarily and discriminatorily applied to them. That appeal remains pending. Plaintiff was granted until May 15, 1987 to voluntarily depart the United States. Plaintiff filed a motion to stay deportation, which apparently has been denied.

The purpose of a motion under Fed.R. Civ.P. 12(b)(6) is to test the sufficiency of the pleading. This purpose fits within the broader purpose of Fed.R.Civ.P. 12 generally, which is to provide the defendant with a simple method for the presentation of defenses but at the same time to prevent the defendant's use of the Fed.R.Civ.P. 12(b) defenses for the purpose of unwarranted delay.

■ When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983); *Dunn v. Tennessee*, 697 F.2d

121, 125 (6th Cir.1982); *Smart v. Ellis Trucking Co.*, 580 F.2d 215, 218 n. 3 (6th Cir.1978); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant*, 421 U.S. 117, 125–26 n. 5, 95 S.Ct. 1524, 1531 n. 5, 44 L.Ed.2d 15 (1975); *Smart*, 580 F.2d at 218 n. 3; *Davis H. Elliot Co. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir.1975), *Ott v. Midland–Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir.1975), a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir.1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir.1956). However, a court will indulge all reasonable inferences that might be drawn from the pleading. *Fitzke v. Shappell*, 468 F.2d 1072, 1076 n. 6 (6th Cir.1972).

■ When determining the sufficiency of a complaint in the face of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). *See also McLain v. Real Estate Bd.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *Neil v. Bergland*, 646 F.2d 1178, 1184 (6th Cir.1981); *Parker v. Turner*, 626 F.2d 1, 7 (6th Cir.1980). Because the motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp.*, 451 F.2d 171, 173 (6th Cir.1971), the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *McDaniel v. Rhodes*, 512 F.Supp. 117, 120 (S.D.Ohio 1981). A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. *Roth Steel Prods.*, 705 F.2d at 155; *Sims*, 451 F.2d at 173.

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School District*, 577 F.2d 1339, 1345 (6th Cir.1978); *Westlake*, 537 F.2d at 858; *Dunn*, 697 F.2d at 125. Rule 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858.

■ However, the court will grant a defendant's motion for dismissal under Fed. R.Civ.P. 12(b)(6) if the complaint is without any merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *See generally, Rauch v. Day & Night Mfg.*, 576 F.2d 697, 702 (6th Cir.1978); *Ott*, 523 F.2d at 1369; *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir.1970).

The Immigration Marriage Fraud Amendments to the Immigration and Naturalization Act provide in relevant part as follows:

[A] petition may not be approved to grant an alien immediate relative status or preference status by reason of a marriage which was entered into [while the alien is subject to deportation proceedings] until the alien has resided outside the United States for a 2–year period beginning after the date of the marriage.

8 U.S.C. § 1154(h). The amendment was adopted to prevent marriages entered into solely for the purpose of circumventing immigration laws. If the marriage takes place after deportation proceedings are initiated, the parties are not given an opportunity to prove the bona fides of their marriage; the alien spouse must leave the United States for a two year period in order to receive the benefits of "immediate relative" status. See 8 U.S.C. § 1151.

Plaintiffs contend that section 1154(h) is unconstitutional on its face and as applied for the reason that it violates the First, Fifth, and Ninth Amendments to the United States Constitution. Specifically, plaintiffs allege:

1.  the statute is vague and uncertain and fails to establish an ascertainable standard upon which to base a presumption of fraudulent intent,

2.  the statute is overbroad and encompasses activities protected by the First Amendment,

3.  the statute is susceptible of sweeping and improper application,

4.  the statute creates an irrebuttable presumption without basis in fact and interferes with fundamental freedoms,

5.  the statute is not reasonably and rationally related to a valid legislative purpose,

6.  the statute is arbitrary and capricious on its face and as applied,

7.  the statute creates a suspect class among aliens,

8.  the statute violates the right of privacy,

9.  the statute is arbitrary and discriminatory as applied and violates equal protection, and

10. the statute as applied to plaintiffs is an *ex post facto* law.

Defendants have moved to dismiss this action on the ground that the complaint fails to state a claim upon which relief can be granted.

■ At the outset, the Court notes that immigration laws are subject only to limited judicial review. The United States Supreme Court has

repeatedly emphasized that "over no conceivable subject is the legislative power of Congress more complete than it is over" admission of aliens. Our cases "have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."

*Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (citations omitted). A deferential review is employed even where fundamental constitutional rights, including those rights at issue in the present case, are at stake. *Id.* The role of the court in determining a constitutional challenge to a federal immigration law is limited to a determination whether the statute is "conceivably related to the achievement of a legitimate federal interest." *Smith v. INS,* 684 F.Supp. 1113, 1116 (D.Mass.1988).

■ Turning first to plaintiffs' arguments that section 1154(h) violates their rights under the First, Fifth, and Ninth Amendments, the Courts which have considered these arguments have resoundingly rejected such constitutional challenges. *Escobar v. INS,* 700 F.Supp. 609 (D.D.C. 1988); *Anetekhai v. INS,* 685 F.Supp. 599 (E.D.La.1988); *Smith v. INS,* 684 F.Supp. 1113 (D.Mass.1988). Several courts have determined that plaintiffs' arguments regarding equal protection, due process, and infringement of the right to privacy are directly controlled by the Supreme Court's decision in *Fiallo, supra.*

*Fiallo* involved a challenge under the First, Fifth and Ninth Amendments of legislation denying immediate relative status to illegitimate alien children of a citizen father, but permitting such status to illegitimate alien children of a citizen mother. Despite the fact that the statute drew distinctions based on sex and illegitimacy, the Supreme Court applied the rational basis analysis, observing that "Congress regularly makes rules [concerning immigration] that would be unacceptable if applied to citizens." 430 U.S. at 792, 97 S.Ct. at 1478, *quoting Mathews v. Diaz,* 426 U.S. 67, 80, 96 S.Ct. 1883, 1891, 48 L.Ed.2d 478 (1976). The Court also noted that as long as an immigration decision has a facially legitimate and bona fide reason, the courts will not balance its justification against First Amendment interests of others. *Id.* 430 U.S. at 794–95, 97 S.Ct. at 1479–80. While inferring that the distinction drawn in that case was perhaps troublesome, the *Fiallo* majority nevertheless upheld the constitutional validity of the statute—"the decision

nonetheless remains one 'solely for the responsibility of Congress and wholly outside the power of this Court to control.' " 430 U.S. at 799, 97 S.Ct. at 1481, *quoting Harisiades v. Shaughnessy*, 342 U.S. 580, 597, 72 S.Ct. 512, 522, 96 L.Ed. 586 (1952).

The courts which have considered the issues presented herein have used the rational basis test described above to find that section 1154(h) is rationally related to a legitimate governmental interest, specifically one of discouraging marriages entered into solely for the purpose of defeating the immigration laws. As the court stated in *Smith v. INS*, 684 F.Supp. at 1117:

> It cannot be denied that Congress has a strong and legitimate interest in deterring marriages which are entered into solely for the purpose of obtaining immigration benefits. Nor is it illogical to assume that aliens who are engaged in deportation proceedings are more likely than other aliens to enter into fraudulent marriages in order to avoid being expelled from the country. In many instances, these aliens will have no valid defense to deportation and marriage to an American citizen may be their only hope for remaining in this country. The amendments are designed to deter marriage fraud in this susceptible group by removing the incentive to engage in a fraudulent marriage. Since marriage to a United States citizen will no longer allow an alien engaged in deportation proceedings to remain in this country, it is rational to conclude that the two year non-residency requirement will have some effect in reducing the incidence of marriage fraud within this high-risk group.

Nor does the Court find the statute unconstitutionally vague and capable of "sweeping" application. The void-for-vagueness doctrine requires that a statute be framed with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The more important

aspect is the latter requirement that minimal guidelines are present to govern official enforcement. *Id.* at 358, 103 S.Ct. at 1858.

■ In the Court's view, section 1154(h) is not a standardless statute. In fact, the statute leaves room for no discretion by immigration authorities in enforcement of the statute. If an alien marries a United States citizen while he or she is involved in deportation proceedings, subsequent application for an immediate relative visa must be denied until the alien departs the country for a two year period. There is nothing in the statute to encourage arbitrary enforcement by immigration officials; instead, the statute mandates what action must be taken in a particular set of circumstances. Certainly, the statute itself can be described as a "sweeping" one, because it denies visas to aliens who marry during deportation proceedings regardless of intent. However, the standard for denial of the visa is abundantly clear, and plaintiffs' arguments concerning the overall fairness of the statute should be made to Congress, not to the courts.

■ In *Almario v. Attorney General*, 872 F.2d 147 (1989); the Sixth Circuit recently considered the issues raised in plaintiffs' complaint regarding the constitutionality of section 1154(h). The plaintiffs in *Almario* argued that section 1154(h) placed an unreasonable burden on their fundamental right to marry, precluded them from proving the legitimacy of their marriage, unconstitutionally classified among alien/citizen couples, and created an unconstitutional irrebuttable presumption. Applying the "minimum rationality" standard discussed above and relying on *Fiallo, supra,* the Sixth Circuit rejected the contention that the Immigration Marriage Fraud Amendments are unconstitutional. The Court stated:

> While we agree that marriage is a fundamental right protected by the Constitution, as noted earlier, this statute involves the plenary power of the legislature to establish policies in the area of immigration and naturalization.... The

federal interest at stake here is deterring sham marriages. Accordingly, although this statute involves a fundamental interest, we may not invoke "a higher standard of review than is normally employed in analyzing constitutional challenges to immigration statutes." (citation omitted). The Court concluded that Congress had a bona fide reason and rational basis for the enactment of the statute and that the statute was rationally related to the legitimate purpose of preventing sham marriages entered into for the purpose of evading immigration restrictions.

Plaintiffs' allegation that the application of section 1154(h) to them constitutes impermissible *ex post facto* legislation must also fail. The *ex post facto* clause has no application in deportation matters. *Galvan v. Press*, 347 U.S. 522, 531, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954).

There is no question that the effect of the challenged statute is harsh. However, based on the deferential standard of review afforded immigration statutes, and for the reasons stated, the Court nevertheless finds section 1154(h) constitutional.

In addition to challenging the constitutionality of section 1154(h), plaintiffs raise two collateral issues directly related to the denial of immediate relative status to Ioannis Minatsis. First, plaintiffs correctly state that section 1154(h) is applicable only to marriages entered into while "administrative or judicial deportation proceedings" are pending. It is plaintiffs' position that no deportation proceedings were pending when they married on January 12, 1987, for the reason that once Judge Kramer entered an order of deportation with an order of voluntary departure and plaintiff waived his right to appeal, the deportation proceedings terminated. In support of this proposition, plaintiffs cite 8 C.F.R. § 243.1, which provides in relevant part that an order of deportation coupled with an order of voluntary departure becomes final upon waiver of appeal to the Board of Immigration Appeals.

The Court finds no merit in plaintiffs' narrow interpretation of the term "deportation proceedings" in the context of this statute. Section 243.1 of the Code of Federal Regulations provides for a time period when a deportation order becomes "final" for administrative purposes and for purposes of judicial review. The regulation does not provide, and plaintiffs have produced no authority that it purports to provide, that deportation "proceedings" terminate when a deportation order becomes final. To so interpret the statute would defeat the legislative purpose of section 1154(h), which is to deter fraudulent marriages entered into for the purpose of evading deportation. If the Court were to construe section 1154(h) as plaintiffs suggest, an alien could complete "deportation proceedings," be ordered deported, then marry a United States citizen and obtain an exemption from the order of deportation. Such a result could not have been intended by Congress in passing section 1154(h).

This interpretation is supported by a rule of the Immigration and Naturalization Service, which became effective August 10, 1988. The rule defines the period of "deportation proceedings" as commencing with the issuance of an order to show cause and terminating when the alien departs from the United States, is found not to be deportable, or the order to show cause is cancelled or terminated. (See Exhibit to Defendants' April 19, 1988 memorandum *contra*). In responding to commentary, the INS indicated the reasoning behind the rule:

> This phrase encompasses more than just the period when the matter is pending before an immigration judge, on appeal to the Board of Immigration Appeals or under judicial review. It does not end when the order of the judge becomes final or when the time allotted for appeal or judicial review expires. Had Congress intended that the period described in section 245(e)(2) be limited to the period when the matter was pending before the EOIR or before the courts on judicial review, it would have so stated. Instead, Congress chose the broader concept including all proceedings, including Service proceedings occurring before and after

EOIR of judicial proceedings. The application of this broader concept for this purpose in no way affects the long-established application of narrower concepts relating to the finality of orders, periods for judicial review, and so forth.

Order No. 1294–88, 53 Federal Register 30011 (August 10, 1988). *See also, Almario, supra* (alien husband subject to § 1154(h) despite being granted voluntary departure).

■ As a second collateral issue, plaintiff argues that the government should be equitably estopped from deporting him because he relied on the order of the immigration judge and the agreement of the parties at the September 4, 1986 deportation hearing. Plaintiff also argues that Judge Kramer's order gave him a vested right to be free from deportation as long as he divorced and remarried prior to February 4, 1987.

The transcript of the deportation hearing reveals that the following exchange took place between the parties:

MR. HARRIS: Russ, as we spoke, there is going to be another filing in this matter and we have discussed putting it over for a period at a later date. We spoke day before yesterday on it.

MR. EZOLT: Okay.

MR. HARRIS: If you recall now.

MR. EZOLT: I think that we're talking about a marri—a divorce, a marriage—or what?

MR. HARRIS: Currently a divorce proceeding pending and as soon as that is completed—that's in Franklin County—as soon as that's completed there will be a filing of an I–130—a marriage in the I–130 file.

MR. EZOLT: Okay. Yeah, the Government wouldn't object to this case being continued until March, Your Honor. But a hearing on the marriage at that time.

THE COURT: For what, though? Adjustment? Or whatever?

MR. EZOLT: Well, if counsel can show that this new marriage is a good marriage, then we would ask for the case

back. If counsel can't, then we would move for final order.

. . . .

MR. EZOLT: The Government would not oppose voluntary departure until February 4, 1987, Your Honor.

THE COURT: Okay. The—Mr. Brady, could you execute the EOIR Form 6. Basically it will be that form. It is ordered that in lieu of an Order of Deportation, Respondent be granted voluntary departure without expense to the Government on or before February 4, 1987 or any extension beyond such date as they be granted by the District Director for the Immigration and Naturalization Service and under such conditions as District Director shall direct.

It is further ordered that if Respondent fails to depart when and as required, the privilege of voluntary departure shall be withdrawn without further notice or proceedings and the following order shall thereupon become immediately effective: Respondent shall be deported from the United States to Canada on the charge contained in the Order to Show Cause.

Transcript at 7–11.

The Supreme Court has held that estoppel cannot be advanced as a theory of recovery against the government without a showing of affirmative misconduct by government agents. *INS v. Miranda,* 459 U.S. 14, 17, 103 S.Ct. 281, 282, 74 L.Ed.2d 12 (1982); *United States v. River Coal Co., Inc.,* 748 F.2d 1103, 1108 (6th Cir.1984). Absent some misconduct going beyond mere negligence, plaintiff cannot "estop the government from enforcing the conditions imposed by Congress for residency in this country." *INS v. Miranda,* 459 U.S. at 18, 103 S.Ct. at 283.

The Court finds as a matter of law that no events transpired during the deportation hearing which would give rise to affirmative misconduct necessary to support plaintiff's estoppel argument. The government did not oppose voluntary departure being set some five months in the future in order to permit plaintiff to marry Stella. How-

ever, all that government counsel indicated was that he would request a hearing at that time to determine if the marriage was bona fide, and, if it proved not to be, he would request a final order of departure. In the interim period, the law changed and counsel was no longer able to request the hearing concerning the marriage. Nothing in this record suggests the type of egregious conduct contemplated by the courts in the context of the estoppel doctrine. *Cf. Mukherjee v. INS*, 793 F.2d 1006 (9th Cir. 1986) (government official affirmed in writing that plaintiff was not subject to two year residency requirement, held INS not estopped from enforcing residency requirement.) Nor were any rights conferred by Judge Kramer's deportation order.[1]

For the foregoing reasons, the Court finds that the complaint fails to state a claim upon which relief can be granted. Defendants' motion to dismiss is GRANTED.

IT IS SO ORDERED.

---

1. Plaintiffs' motion to strike defendant's reply brief is DENIED. The Court need not reach defendant's argument that plaintiffs have failed to exhaust their administrative remedies.