Charitable DELMAS, Plaintiff,

v.

Alberto GONZALES, Attorney General, et al., Defendants.

No. 05–21507.

United States District Court, S.D. Florida.

Dec. 9, 2005.

Dexter Lee, Miami, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment, filed September 14, 2005, and Defendants' Motion for Summary Judgment, filed September 27, 2005.

THE COURT has considered the motions and the pertinent portions of the record and is otherwise fully advised in the premises.

#### Legal standard

The Court should grant a motion for summary judgment only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c): *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court explained in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the

light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the court must not decide them: it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine.' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

### *Factual Background*

Both parties agree that there are no material facts in dispute in this case. Plaintiff, Charitable Delmas, is a citizen of the Bahamas. Pl.'s Mem. 1. Plaintiff en-tered the United States as a nonimmigrant visitor on December 14, 1989. *Id.* On July 13, 1990, Plaintiff married Gontrand Delmas, a lawful permanent resident of the United States. *Id.* On September 22, 2003, Plaintiff obtained a Final Judgement of Dissolution of Marriage from Gontrand Delmas, in the Circuit Court, Miami–Dade County. *Id.* at 2. On January 14, 2004, Plaintiff filed a self-petition for lawful residence, pursuant to Section 204(a)(1) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1154(a)(1)(B)(ii), as amended by The Violence Against Women Act ("VAWA"), and The Violence Against Women Act of 2000 ("VAWA 2000"), claiming her former spouse Mr. Delmas was abusive. Pl.'s Mem. 2. Sometime between obtaining a divorce from Mr. Delmas on September 22, 2003 and January 14, 2004, the date of the filing of the self-petition, Plaintiff remarried. *Id.*

On or about December 14, 2004, the U.S. Citizenship and Immigration Services (US-CIS) denied Plaintiff's petition on the ground that she had remarried prior to the filing or the approval of her petition. *Id.* Plaintiff appealed the denial to the Administrative Appeals Office (AAO). *Id.* On May 2, 2005, the AAO dismissed Plaintiff's appeal. *Id.*

### *Discussion*

Plaintiff argues that the AAO denied Plaintiff's self-petition pursuant to Section 204(a)(1) of the INA without basis in law and contrary to applicable INS statutes, regulations, operating instructions, and public policy. Defendant argues that the denial was based on a permissible construction of § 1154(a)(B)(ii).

When a court reviews an agency's construction of a statute it administers, it faces two questions; first, whether the intent of Congress is clear; if so, that is the end of the matter: but where the

statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* requires a federal court to accept an agency's construction of a statute if the statute is ambiguous, and if the implementing agency's construction is reasonable. *National Cable & Telecomms. Ass'n v. Brand X Internet Servs.,* — U.S. —, —, 125 S.Ct. 2688, 2699, 162 L.Ed.2d 820 (2005). Ambiguities in statutes within an agency's administrative jurisdiction are "delegations of authority to the agency to fill the statutory gap in reasonable fashion." *Id.*

In the instant case, § 1154(a)(1)(B)(ii) is silent on the effect of remarriage prior to approval of a self-petition on an alien's eligibility. The AAO interpreted the statute to disqualify an alien who had remarried before filing a self-petition. The AAO reached its determination based on Congress's specific reference to remarriage in § 1154(h). Section 1154(h) provides, in part, that the "remarriage of an alien whose petition was approved under subsection (a)(1)(B)(ii)...of this section...shall not be the basis for revocation of a petition approval." 8 U.S.C. § 1154(h). The AAO decision of May 2, 2005, denying Plaintiff's appeal states, "Congress specifically considered that remarriage of an abused spouse would not terminate eligibility once a petition had been approved; by implication, remarriage before filing the Form I–360 petition does terminate eligibility." A.R. 3.

This method of statutory interpretation is known by the maxim "*expressio unius est exclusio alterius,*" meaning "the mention of one thing implies the exclusion of another." *See U.S. v. Castro,* 837 F.2d 441, 442 (11th Cir.1988). The *expressio unius* principle does have limits: it cannot apply when the legislative history and context are contrary to such a reading of the statute. *Id.* at 442–43. In this case, the legislative history and context of the statute are consistent with reading the statute to disqualify the eligibility of an alien who remarries prior to filing a self-petition.

Congress's purpose in enacting VAWA of 1994 was, in part, to "permitt[ ] battered immigrant women to leave their batterers without fearing deportation." H.R.Rep. No. 103–395. The same House Report explains the purpose of allowing an abused spouse to self-petition: "[t]he purpose of permitting self-petitioning is to prevent the citizen or resident from using the petitioning process as a means to control or abuse an alien spouse." *Id.* In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000 ("VTVPA"): Division B of the act is the Violence Against Women Act of 2000 ("VAWA 2000"). In the Battered Immigrant Women Protection Act of 2000, contained within VAWA 2000, Congress recognized that several groups of battered immigrant women and children did not have access to the immigration protections of VAWA of 1994. Pub.L. 106–386, § 1502, 114 Stat. 1464 (2000). Congress found that "providing battered immigrant women...with protection against deportation...frees them to cooperate with law enforcement...without fearing that the abuser will retaliate by withdrawing or threatening withdrawal of access to an immigration benefit under the abuser's control." *Id.*

The VTVPA made three changes to the self-petitioning process from which the AAO could conclude that Congress did not intend to extend protection to an abused spouse who remarries before filing a self-

petition. First, prior to VTVPA § 1503(c). a self-petitioning spouse was required to be married to the abusive spouse at the time of filing the petition. Section 1503(c) amended 8 U.S.C. § 1154 to permit an abused alien spouse who had already terminated her marriage to self-petition, provided the petition was within two years of the termination and the alien demonstrated a connection between the legal termination of the marriage and battering or extreme cruelty by the spouse. 8 U.S.C. §§ 1154(a)(1)(A)(iii)(II)(CC)(ccc) and 1154(a)(1)(B)(ii)(II)(CC)(bbb). Second, VTVPA § 1507(b) amended 8 U.S.C. § 1154(h), to permit an abused self-petitioning spouse, whose petition had already been approved, to remarry without having the approval of her petition revoked. This amendment shows that Congress contemplated that an abused self-petitioning spouse might have occasion to remarry, but did not amend the statute to allow an abused spouse to remarry prior to filing the self-petition. Third, under the VTVPA, Congress extended eligibility for the self-petitioning process to additional groups including "widowed battered spouses of U.S. citizens" and "divorced spouses of U.S. citizens and lawful permanent residents." *See VTVPA* § 1503(b) and (c). However, Congress did not grant eligibility to remarried spouses of U.S. citizens and lawful permanent residents.

By expanding the self-petitioning process to allow divorced spouses to self-petition, Congress advanced its goal of preventing abusive spouses from using the petitioning process as a means to control or abuse an alien spouse. An abusive spouse could no longer use the threat of divorce because an abused spouse could self-petition within two years of divorce and thus she could safely leave her abuser. Plaintiff argues that there is no evidence that Congress intended remarriage to negate the need for protection of the abused spouse. The legislative history and context of VAWA and the VTVPA show otherwise. VAWA relief is limited to those vulnerable to abuse. The AAO apparently concluded that an abused spouse who remarries prior to filing a self-petition is not the type of battered immigrant woman Congress was concerned with when enacting VAWA or the VTVPA ad, therefore, permissibly construed the statute to deny the instant petition.

■■ In Plaintiff's motion for summary judgment, Plaintiff argues the denial of her petition imposes an unreasonable burden on her fundamental right to marry under the U.S. Constitution. In addressing the constitutionality of an immigration provision, "it is important to underscore the limited scope of judicial inquiry into immigration legislation." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). Congress possesses broad power to decide which classes of aliens may enter the United States and also the terms and conditions of their entry. *See Anetekhai v. INS*, 876 F.2d 1218, 1221 (5th Cir.1989) (citing *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909) ("But over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens.")). Under the highly deferential standard of *Fiallo*, Congress may enact a discriminatory rule regarding immigration or naturalization so long as it has a "facially legitimate and bona fide reason" for doing so. *Fiallo*, at 794, 97 S.Ct. 1473 (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 770, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)).

In *Almario v. Attorney General*, 872 F.2d 147 (6th Cir.1989), the Sixth Circuit found that a section of Immigration Marriage Fraud Act imposing two-year foreign residency requirement on aliens marrying United States citizens during deportation

**1304**

proceedings did not burden the right to marry. The residency requirement meant that a woman had to choose between separation from her husband for two years, or separation from her work, family, and other benefits of living in the United States, were she to choose to accompany her husband to his native country. *Id.*

In the present case, the Plaintiff was not prevented from remarrying by § 1154. Rather she faced a dilemma; the fact that remarriage prior to approval of the self-petition would disqualify her from obtaining lawful permanent residence as an abused spouse was a factor to consider in deciding whether to marry at that time, or wait until her petition was approved.

Congress could reasonably conclude that an abused spouse who chooses to remarry before approval of her self-petition based on the abuse of a former spouse is no longer in need of protection. Therefore, the AAO's interpretation of § 1154 does not burden Plaintiff's ability to marry in a way that would violate the Constitution.

It is hereby,

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment is DENIED.