**Rogelio GOMEZ–ARAUZ, Plaintiff,**

v.

**D. Gene McNARY, Commissioner of the Immigration and Naturalization Service, United States Department of Justice, Defendant.**

**No. CIV 90–151–R.**

United States District Court,
W.D. Oklahoma.

Aug. 15, 1990.

Winningham & Associates, P.C., Oklahoma City, Okl., for plaintiff.

Ronald Pyle, Asst. U.S. Atty., Oklahoma City, Okl., James T. Reynolds, Special Asst. U.S. Atty., Dallas, Tex., for defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are the parties' cross-motions for summary judgment on the Plaintiff's claims for declaratory and injunctive relief.

The Plaintiff seeks a determination and declaration that the District Director of the Immigration and Naturalization Service ("INS") acted unlawfully in denying the Plaintiff's request for work authorization. Aliens' requests for employment authorization are governed by 8 CFR § 274a.13, which provides that, except in the case of an alien requesting political asylum, "the approval of an application for employment authorization shall be within the discretion of the district director." The Plaintiff apparently argues that the District Director's denial of his request for employment authorization was unreasonable and unsupported by the evidence, and was based upon an erroneous interpretation of the two year foreign residence requirement imposed by the Immigration Marriage Fraud Amendments of 1986, Title 8, U.S.C. § 1154(h).

In reviewing the District Director's decision to deny the Plaintiff's application for employment authorization, the Court does not substitute its judgment for that of the District Director; rather, the Court conducts a limited review. *Xytex Corp. v. Schliemann,* 382 F.Supp. 50 (D.Colo.1974). The findings of the District Director will not be disturbed unless it appears that he acted capriciously, arbitrarily or abusively in the exercise of his discretion. *See Cubillos–Gonzalez v. Immigration and Naturalization Service,* 352 F.2d 782 (9th Cir. 1965); *Chi–Wai Lui v. Pilliod,* 358 F.Supp. 542 (N.D.Ill.1973); *Golabek v. Regional Manpower Administration,* 329 F.Supp. 892 (E.D.Pa.1971); *Rizzi v. Murff,* 171 F.Supp. 362 (S.D.N.Y.1959).

In this case, it appears that the District Director's decision to deny the Plaintiff's request for employment authorization was based upon a number of factors, including the Director's determination that the Plaintiff was ineligible for preferential immigrant relative status. The Plaintiff had claimed preferential status as the spouse of a United States citizen. The INS, citing the 1986 Immigration Marriage Fraud Amendment to the Immigration and Nationality Act ("the IMFA"), responded that the Plaintiff had married after deportation proceedings had been commenced, and that, therefore, he was not entitled to have his immigration status adjusted until he had resided outside the United States for a two year period beginning after the date of the marriage. The IMFA provides, at Title 8, U.S.C. § 1154(h), that "... a petition may not be approved to grant an alien immediate relative status or preference status by reason of a marriage which was entered into during the [pendency of deportation proceedings] ... until the alien has resided outside the United States for a 2–year period beginning after the day of the marriage."

The Plaintiff argues that the two year foreign residence requirement does not apply to him because he was married before the deportation proceedings against him were commenced. In support of this contention, the Plaintiff relies upon a Judgment entered on November 7, 1989, by the District Court of Oklahoma County, State of Oklahoma, declaring that the Plaintiff and his common-law wife entered into a legally binding marriage on or before February 1, 1989.

The INS does not contest the validity of the Plaintiff's marriage under Oklahoma law; rather, the INS disputes the Plaintiffs' contention and the state court's finding as to the date on which the marriage occurred. At the time of the District Director's decision on the Plaintiff's request for work authorization, the District Director had been presented with substantial evidence disputing the Plaintiff's contention as to the date of the marriage. For instance, the INS had presented evidence showing that on April 19, 1989, after the date Plaintiff claims his marriage occurred, the Plaintiff told agents of the INS that his

marital status was "divorced."[1] The INS presented evidence that the Plaintiff and his wife had made conflicting statements as to their marital status prior to the commencement of the deportation proceedings. The state court judgment obtained by the Plaintiff's wife indicated that the marriage was entered into "on or before February 1989." The I–130 Petition for Alien Relative filed by the Plaintiff's wife, states that the marriage took place on November 15, 1988. On January 17, 1989, the Plaintiff signed an Occupational License Application with the Oklahoma Horse Racing Commission listing his marital status as of that date as "single." The Plaintiff's wife filed an income tax return in October, 1989 stating that her marital status as of that date was "single."

In addition, the INS presented the District Director with evidence which cast serious doubt upon the Plaintiff's credibility. The Plaintiff had previously made false claims that he was a United States citizen, and had a lengthy criminal record. The Court finds that the District Director did not abuse his discretion in finding that the Plaintiff's common law marriage was not formed prior to the commencement of his deportation proceedings on April 19, 1989.

■ The Plaintiff also challenges the constitutional validity of the two year foreign residence requirement imposed by the IMFA, Title 8, U.S.C. § 1154(h). The two year foreign residence requirement has been upheld against numerous constitutional challenges. See, e.g., *Almario v. Attorney General*, 872 F.2d 147 (6th Cir.1989); *Anetekhai v. Immigration and Naturalization Service*, 876 F.2d 1218 (5th Cir. 1989); *Smith v. Immigration and Naturalization Service*, 684 F.Supp. 1113 (D.Mass.1988); *Azizi v. Thornburgh*, 719 F.Supp. 86 (D.Conn.1989), *aff'd*, 908 F.2d 1130 (2d Cir.1990).

The Plaintiff apparently contends that the two year foreign residence requirement violates his procedural due process rights under the Fifth Amendment. The Plaintiff's due process rights in connection with his request for employment authorization are quite limited. The Plaintiff is not entitled to an evidentiary hearing on the bona fides of his marriage, because the bona fides of his marriage is not relevant to the application of the two year foreign residence requirement.[2] The inquiry is limited to the issue of whether the IMFA requirements have been applied properly; i.e., whether the marriage took place while deportation proceedings were pending, and whether the alien has lived outside the United States for two years since the time of the marriage. The *timing* of the marriage, rather than its *validity*, is the focus of the IMFA two year foreign residence requirement. An alien who marries a citizen while deportation proceedings are pending is subject to the two year foreign residence requirement regardless of the validity of his marriage. *Anetekhai v. Immigration and Naturalization Service*, 876 F.2d 1218 (5th Cir.1989); *Azizi v. Thornburgh*, 719 F.Supp. 86 (D.Conn.1989), *aff'd*, 908 F.2d 1130 (2d Cir.1990); *Smith v. Immigration and Naturalization Service*, 684 F.Supp. 1113 (D.Mass.1988).

The two year foreign residence requirement does not, as some have argued, impose an irrebuttable presumption that the alien's marriage is invalid. The requirement simply seeks to deter fraudulent marriages by removing the incentive for an alien to marry a United States citizen during deportation proceedings. *Anetekhai v. Immigration and Naturalization Service*, 876 F.2d 1218 (5th Cir.1989); *Azizi v. Thornburgh*, 719 F.Supp. 86 (D.Conn.1989), *aff'd*, 908 F.2d 1130 (2d Cir.1990); *Smith v. Immigration and Naturalization Service*, 684 F.Supp. 1113 (D.Mass.1988).

---

1. The Plaintiff now disputes the admissibility of this statement on the ground that he was unlawfully questioned by the same officer who arrested him. *See* 8 C.F.R. § 287.3. The INS, however, has produced evidence showing that the Plaintiff was, in fact, arrested and interrogated by two different INS officers. In any event, it does not appear that this isolated admission by the Plaintiff was a major factor in the Director's decision, and the Plaintiff has not shown any unfair prejudice resulting from the admission of this statement.

2. In this case, the INS does not even challenge the validity of the Plaintiff's marriage.

The Plaintiff cites the recent case of *Escobar v. Immigration and Naturalization Service*, No. 89–5037, 1990 WL 6857 (D.C.Cir., Feb. 2, 1990), in support of his contention that the two year foreign residence requirement violates his procedural due process rights. In *Escobar*, the Court of Appeals for the District of Columbia Circuit held that the two year foreign residency requirement violated the Fifth Amendment procedural due process rights of the alien's citizen spouse. The *Escobar* Court reasoned that the alien's citizen wife had a constitutional right to have her husband remain in the United States if the marriage was valid, and that the two year foreign residence requirement deprived her of her due process right to a hearing on the validity of her marriage. This Court notes, however, that the District of Columbia Circuit has now withdrawn the *Escobar* opinion, and has granted a rehearing. The Court further notes that the majority of the other courts which have considered the issue have held that a citizen spouse does not have a constitutional right to have his or her alien spouse remain in the United States; and that neither the alien's nor the citizen's procedural due process rights are violated by the two year foreign residence requirement. This Court is not persuaded by the reasoning of the withdrawn *Escobar* opinion, and follows the majority view that neither the alien's nor the citizen spouse's procedural due process rights are violated by the two year foreign residence requirement.[3] *Accord, Almario v. Attorney General*, 872 F.2d 147 (6th Cir.1989); *Anetekhai v. Immigration and Naturalization Service*, 876 F.2d 1218 (5th Cir.1989). *Contra, Manwani v. United States Dept. of Justice*, 736 F.Supp. 1367 (W.D.N.D.1990).

■■■ The two year foreign residence requirement has also been upheld against substantive due process challenges by aliens and their citizen spouses. Aliens and their citizen spouses have argued that the requirement violates their substantive due process rights by infringing upon their fundamental right to marry. While the

Court acknowledges the fundamental nature of the right to marry, the Court must also consider that control over immigration matters is a sovereign prerogative. Perhaps in no area is Congress' power more complete. *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *Anetekhai v. Immigration and Naturalization Service*, 876 F.2d 1218 (6th Cir.1989); *Azizi v. Thornburgh*, 719 F.Supp. 86 (D.Conn. 1989). Therefore, judicial review of legislation involving immigration matters is limited. *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *Anetekhai v. Immigration and Naturalization Service*, 876 F.2d 1218 (6th Cir.1989); *Azizi v. Thornburgh*, 719 F.Supp. 86 (D.Conn.1989). The statutory two year foreign residence requirement will be reviewed only to determine whether it is rationally related to a legitimate governmental interest. The government clearly has a legitimate interest in deterring immigration marriage fraud. *Anetekhai*, 876 F.2d at 1221; *Azizi*, 719 F.Supp. at 90–91; *Smith*, 684 F.Supp. at 1116. *Contra, Manwani v. United States Dept. of Justice*, 736 F.Supp. 1367 (W.D.N.C.1990). Congress logically could have concluded that aliens who are engaged in deportation proceedings would be less likely to enter into sham marriages if they were required to reside outside the United States for two years before gaining preferential status. Thus, the foreign residence requirement is rationally related to the government's interest in deterring aliens facing deportation proceedings from entering into fraudulent marriages. *Anetekhai v. Immigration and Naturalization Service*, 876 F.2d 1218 (5th Cir.1989); *Azizi v. Thornburgh*, 719 F.Supp. 86 (D.Conn.1989), *aff'd*, 908 F.2d 1130 (2d Cir.1990); *Smith v. Immigration and Naturalization Service*, 684 F.Supp. 1113 (D.Mass.1988).

■■■ The two year foreign residence requirement also withstands equal protection analysis. The distinction between those aliens who marry during deportation pro-

---

**3.** Furthermore, the Plaintiff's citizen spouse is not a party to this proceeding, and does not assert any due process rights.

**1076**

ceedings and those who marry at other times is rationally related to a legitimate government interest in deterring sham marriages entered into for the purpose of avoiding deportation. *Almario v. Attorney General,* 872 F.2d 147 (6th Cir.1989); *Anetekhai v. Immigration and Naturalization Service,* 876 F.2d 1218 (5th Cir. 1989); *Smith v. Immigration and Naturalization Service,* 684 F.Supp. 1113 (D.Mass.1988).

The Court acknowledges the recent decision in *Manwani v. United States Dept. of Justice,* 736 F.Supp. 1367 (N.D.N.C.) in which the Court held that the two year foreign residence requirement violated the equal protection clause of the Fifth Amendment by "singling out those citizens who marry during the pendency of their immigration proceedings...." In *Manwani,* the Court applied "heightened scrutiny" in reviewing the statute, which this Court declines to do in light of the Supreme Court's directive in *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) to apply limited scrutiny to legislation involving immigration matters. In *Manwani,* the Court viewed the statute as distinguishing between citizens who marry aliens during immigration proceedings and other citizens. This Court views the statute as distinguishing between those aliens who marry citizens during deportation proceedings and aliens who marry at other times.[4]

 Even if the District Director's application of the two year foreign residence requirement had been contrary to the evidence or constitutionally flawed, the District Director would have had discretion to deny the Plaintiff's request for work authorization. The District Director's discretion is surely broad enough to enable him to deny work authorization to aliens who have acquired a criminal record in this country, and who have falsely claimed to be a United States citizen. *See* 8 C.F.R. § 274a.13.

The Court finds no illegality or abuse of discretion in the District Director's denial of the Plaintiff's request for work authorization. The Court finds no threat of irreparable injury to the Plaintiff which would warrant the extraordinary remedy of an injunction. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). The Court finds, as a matter of law, that the Plaintiff is not entitled to the declaratory or injunctive relief he seeks. The Plaintiff's Motion for Summary Judgment is therefore DENIED. The Defendant's Cross–Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

---

**4.** Even if the statute distinguished between those citizens who marry aliens during the pendency of deportation proceedings and citizens who marry under other circumstances, this distinction would clearly withstand the limited scrutiny applied to legislation involving immigration matters, since that distinction is rationally related to a legitimate governmental interest in deterring sham marriages. In this case, however, the rights of the citizen spouse are not before the Court since she is not a party to this proceeding.