Robin Denise BARMO, Plaintiff,

v.

Janet RENO, Attorney General of the United States, Defendant.

Civ. A. No. 94–7808.

United States District Court,
E.D. Pennsylvania.

Sept. 13, 1995.

James J. Orlow, Philadelphia, PA, for Plaintiff.

Kristen A. Giuffreda, U.S. Dept. of Justice–Office of Immigration Litigation, Washington, DC, for Defendant.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Defendant moves to dismiss Plaintiff's complaint, which challenges the constitutionality of § 204(c) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1154(c).[1]

---

1. To avoid confusion, I will refer to this and other provisions of the Immigration and Nation-

That statutory provision bars approval of any immigrant visa petition filed on behalf of an alien who previously has been accorded or has sought to be accorded "immediate relative" status under the immigration laws by reason of a marriage determined by the Attorney General to have been fraudulent. Plaintiff attacks § 1154(c) on substantive due process grounds under the Fifth Amendment. Concluding that this question is controlled by the deferential standard articulated for substantive immigration classifications in *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), I find that § 1154(c) is supported by a "facially legitimate and *bona fide* reason" and is thus valid. Plaintiff also advances procedural due process and Eighth Amendment arguments against § 1154(c). I find that these contentions, too, are without merit. Accordingly, I uphold § 1154(c) and grant Defendant's motion to dismiss Plaintiff's complaint. In addition, because I stayed the deportation of Plaintiff's alien husband pending resolution of this motion, I now vacate the stay order.

## I. BACKGROUND

The relevant facts are undisputed. Plaintiff, Robin Denise Barmo, is a United States citizen residing in Philadelphia. On August 29, 1986, she married Bashar Barmo, a Syrian national. Plaintiff's marriage to Mr. Barmo is her first, and its legitimacy is not contested. Mr. Barmo, however, had been previously married to a woman named Migdalia Lopez, who, like Plaintiff, is also a United States citizen. On the basis of his marriage to Ms. Lopez, Mr. Barmo sought and was granted an adjustment of his immigration status to that of lawful permanent resident of the United States. Mr. Barmo's

marriage to Ms. Lopez ended in divorce on October 23, 1984.

Immigration authorities subsequently determined that Mr. Barmo's marriage to Ms. Lopez was a sham and that Mr. Barmo had participated in a marriage fraud ring through which he had conspired with others to obtain immigration benefits illegally. As a result of these offenses, on June 26, 1984, Mr. Barmo was convicted in the United States District Court for the Eastern District of Pennsylvania on charges of making false statements to a government agency in violation of 18 U.S.C. §§ 1001 and 1002. He was sentenced by the Honorable Edward N. Cahn to a term of incarceration, which he served. Mr. Barmo was also stripped of his lawful immigrant status and, on June 10, 1986, was ordered deported by an immigration judge. The deportation order was affirmed by the Board of Immigration Appeals on April 17, 1989, and thereafter by the Third Circuit.

Thus, with her husband facing imminent deportation, Plaintiff brought this challenge to the validity of § 1154(c), which perpetually bars from obtaining lawful immigrant status someone who, like Mr. Barmo, has been convicted of marriage fraud. On December 29, 1994, Plaintiff filed with the Eastern Service Center of the Immigration and Naturalization Service ("INS") an immigrant visa petition on behalf of Mr. Barmo to obtain for him the preferential status of "immediate relative" that would ordinarily result from a valid citizen-alien marriage. This petition remains pending before the INS.[2] On February 15, 1995, after being informed that Mr. Barmo's deportation had been set for February 28, 1995, and that the INS had refused to stay it further, Plaintiff filed the instant action seeking to have § 1154(c) declared unconstitutional. Concurrently with the filing of her

---

ality Act by their current United States Code section numbers. The Immigration and Nationality Act is codified at 8 U.S.C. §§ 1101–1504.

**2.** The submission of a visa "petition" in the United States by a citizen or lawful permanent resident is the first of two steps in the ordinary process by which an "immediate relative" visa is obtained for the filing citizen's or permanent resident's spouse. 8 U.S.C. §§ 1153(f) & 1154; 8 C.F.R. § 204.1. The "petitioning" step enables immigration officials in the United States to conduct a preliminary review of the alien's qualifica-

tions. Only when the petition is approved may the process move to the second step, when the alien on whose behalf the "petition" was filed submits a visa "application" to the consular official in the foreign locale where the alien resides. 22 C.F.R. § 42.61. While the usual process contemplates that the alien for whom the visa is sought will be residing and applying from outside the United States, the immigration laws also make provision for aliens who wish to apply for visas while already residing in the United States. 8 U.S.C. § 1255.

complaint, Plaintiff moved for provisional injunctive relief staying her husband's deportation until her substantive claims could be addressed. This motion, styled a "Motion for Temporary Restraining Order," was opposed by Defendant, who promptly moved to dismiss Plaintiff's complaint. Following briefing on the injunctive request and underlying substantive issues by both parties, a hearing on the record was held in chambers on February 23, 1995.

At that hearing, Plaintiff pressed the irreparable harm she would suffer were the stay not granted, emphasizing that because her husband was to report for deportation within two days, her family would experience certain and severe disruption before her constitutional claims could be examined. Defendant countered that Mr. Barmo's deportation arose out of past acts unrelated to Plaintiff's underlying claims and could not be characterized as "irreparable harm" connected with anything at issue in this suit. Moreover, Defendant observed, Plaintiff would not be entitled to a stay of Mr. Barmo's deportation even were she to prevail on her constitutional claims, as her victory would only require the INS to consider her visa petition without regard to the prohibition contained in § 1154(c). Reasoning that the INS could and usually does consider such petitions while the alien beneficiary resides outside the United States, Defendant argued that Plaintiff could not prevail on her stay request no matter what the outcome of her underlying suit.

I concluded that I possessed insufficient familiarity with the visa petition procedure to evaluate definitively the competing arguments on the stay request at that time. Nonetheless, it was obvious to me that Plaintiff would suffer substantial harm were her stay request improperly denied. Moreover, I was convinced that it would not greatly harm Defendant or the public interest were I to

delay for a short while longer execution of the deportation order, given the substantial length of time Plaintiff's husband had already been residing in the United States while fighting deportation. Tr. of 2/23/95 Hr'g at 20–21, 30–31. Consequently, I granted Plaintiff's request for a stay temporarily, until I could adequately study the relevant immigration procedures and underlying constitutional questions. On February 24, 1995, I entered an order to that effect, which, by the parties' consent, remained effective until I could address the merits of Plaintiff's claims by ruling on Defendant's motion to dismiss. *See* Tr. of 2/23/95 Hr'g at 30–31 (discussion with Defendant's counsel of necessity of time to study issues before lifting stay; assurance of Court that if merits of constitutional claims are decided against Plaintiff, deportation would proceed immediately).

I take up Defendant's motion to dismiss today, and finding Plaintiff's constitutional claims without merit, I grant it. Accordingly, I also vacate the stay order of February 24, 1995.[3]

## II. DISCUSSION

### A. *Ripeness*

■ Before turning to the substantive constitutional issues, I briefly address a threshold justiciability question Defendant raises. Defendant does not dispute that this case arises under the federal immigration laws and that jurisdiction is thus conferred under 28 U.S.C. § 1331 and 8 U.S.C. § 1329. Rather, Defendant asks me to refrain from exercising my admitted jurisdiction, contending that there is no "ripe" case or controversy here because Plaintiff's visa petition has yet to be decided by the INS. I disagree.

■ The purpose of the ripeness doctrine is to prevent courts "from entangling them-

---

3. I would now vacate the stay regardless of the merits of Plaintiff's constitutional claims here. Having educated myself in the pertinent visa petition procedures, I agree with Defendant that those procedures normally contemplate that the alien beneficiary of a petition such as that Plaintiff has filed will be residing outside the United States during the pendency of the petition process. *See supra*, n. 2. Thus, because even a

victory for Plaintiff on her constitutional arguments would not entitle her to have Mr. Barmo remain in the United States while proceeding with her visa petition, Plaintiff cannot demonstrate the "irreparable harm" necessary to obtain the injunctive remedy of a stay. *See Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 191–92 (3d Cir.1990) (showing of irreparable harm required for injunctive relief).

selves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). But ripeness, like the related court-developed restraints embodied in the principles of administrative exhaustion and finality, is to be applied in a pragmatic fashion. *Cf. General Offshore Corp. v. Farrelly,* 743 F.Supp. 1177, 1187–92 (D.V.I.1990) (discussing relationship and practical nature of ripeness, exhaustion, and finality determinations; citations omitted). Specifically, the ripeness determination considers in a practical light the fitness of the issues for judicial decision and the hardship to the parties of withholding court examination. *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. at 1515–16; *General Offshore Corp.,* 743 F.Supp. at 1187.

 As to the issues' fitness for consideration, it is recognized that purely legal or constitutional issues are generally fit for judicial adjudication, as they implicate no special agency expertise. *See, e.g., Pennell v. City of San Jose,* 485 U.S. 1, 11–14, 108 S.Ct. 849, 857–59, 99 L.Ed.2d 1 (1988) (while "as applied" due process and equal protection challenge to rent control ordinance was not ripe because it required factual context that could only be developed during agency proceedings, facial attack presented purely legal issues and was thus ripe for judicial adjudication). The second prong of the ripeness analysis—the hardship imposed on the parties were the court to refrain from addressing the issue—is established if delay in resolving the question would injure the parties or if, conversely, prompt resolution would benefit both parties. *General Offshore Corp.,* 743 F.Supp. at 1187 (citations omitted).

Applying these standards, I conclude that the pendency of Plaintiff's visa petition before the INS here poses no justiciability problems for this case on ripeness grounds. First, the issues presented here are purely legal. Plaintiff challenges § 1154(c) as facially unconstitutional, that is, invalid under any circumstances in which it might be applied. Nor is there any need for factual development simply because the complaint adds an attack on § 1154(c) as applied in the particular circumstances here. The parties essentially agree that because § 1154(c) will necessarily bar approval of Plaintiff's petition, there is no real possibility of agency factfinding or other action that could obviate the need to address the constitutional questions. *Compare General Offshore Corp.,* 743 F.Supp. at 1189 (holding "as applied" constitutional challenge to wrongful discharge statute unripe because possibility existed that agency might find discharge in question had been justified, thereby mooting constitutional question). Accordingly, the exclusively constitutional character of the issues here renders them more suitable for judicial adjudication than for agency decision. *See Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. at 1515–16.[4]

The hardship prong of the ripeness analysis is satisfied as well. Plaintiff asserts that the result of the agency proceeding on her petition is a foregone conclusion, as the INS is absolutely prohibited from approving her visa petition by the terms of § 1154(c). Defendant does not deny this, acknowledging that "we may predict" a negative decision from the INS on Plaintiff's petition "will be forthcoming." Def.'s Br. in Opp'n to Pl.'s Mot. for T.R.O. and in Supp. of Def.'s Mot. to Dismiss at 7. In the meantime, the deportation of Plaintiff's husband originally scheduled for February 28, 1995, will proceed absent a further stay. Thus, Plaintiff's family life will be disrupted while a foretold petition process plays out. Because Plaintiff's visa hopes rest entirely on her constitutional challenge to § 1154(c), her family could suffer possibly years of dislocation before any meaningful review of her visa petition can begin. This is sufficient to establish hardship resulting from delay in adjudicating Plaintiff's constitutional claims.

Moreover, prompt resolution of the constitutional questions presented here is not

---

**4.** Indeed, it appears that the INS could not consider the constitutional questions raised here even if it wanted to. *See Matter of Cenatice,* 16 I. & N.Dec. 162, 166 (BIA 1977) (Board of Immigration Appeals does not pass on constitutionality of statutes it administers).

against Defendant's interest. For were the INS proceeding to reach its certain conclusion denying Plaintiff's petition based on § 1154(c) only to have that statutory basis subsequently invalidated, a second administrative proceeding would be required to consider anew Plaintiff's visa petition for Mr. Barmo. Addressing the constitutional questions now will prevent the need for duplicated administrative effort and allow Plaintiff's petition to be conclusively determined in the current proceeding.

In short, practical assessment of the situation here finds little to be gained by awaiting the INS's inevitable ruling denying Plaintiff's petition under § 1154(c). I therefore reject Defendant's contention that this case is unripe. Having disposed of the preliminary justiciability question here, I now proceed to the merits of Plaintiff's constitutional claims.

## B. *Constitutional Claims*

The Immigration and Nationality Act ("INA") exempts "immediate relatives" from statutorily imposed numerical immigration quotas. 8 U.S.C. § 1151(a). Thus, an alien who qualifies as an "immediate relative" is granted permanent resident status ahead of thousands of other aliens who seek to immigrate to the United States each year. A spouse of a United States citizen is by definition an "immediate relative." 8 U.S.C. § 1151(b).

Marriage to a United States citizen is not difficult to orchestrate. "[A]nyone, with a little assistance from Cupid and/or Mammon, can become a citizen's spouse." *McLat v. Longo,* 412 F.Supp. 1021, 1023 (D.V.I.1976). Thus, because marriage to a citizen permits such a significant shortcut to the highly prized immigration visa through its conferral of "immediate relative" status, Congress anticipated that many would-be immigrants might be tempted to engage in marriage fraud. *See, e.g., Fraudulent Marriage and Fiance Arrangements to Obtain Permanent*

*Resident Status: Hearings Before the Subcomm. on Immigration and Refugee Policy of the Senate Comm. on the Judiciary,* 99th Cong., 1st Sess. 3 (1985) (statement of Immigration and Naturalization Service Commissioner Nelson) (observing the "[t]remendous draw factors and few deterrents" of feigning spousal relationship). To address this problem, Congress imposed through the INA and other statutes substantial criminal and civil penalties on those who evade or attempt to evade immigration restrictions through fraudulent marriages and on those who conspire with others to do so. *E.g.,* 8 U.S.C. § 1325(b) (Supp.1995) (imposing maximum penalty of five years' imprisonment and $250,000 fine for marriage fraud). *See also* Karen L. Rae, Note, *Alienating Sham Marriages for Tougher Immigration Penalties: Congress Enacts the Marriage Fraud Act,* 15 Pepp.L.Rev. 181, 195 & n. 113 (1988) (discussing criminal penalties); Mary L. Sfasciotti & Luanne B. Redmond, *Marriage, Divorce, and the Immigration Laws,* 81 Ill.B.J. 644, 645 n. 6 (1993) (same).

Among the stiffest of these penalties is that codified at 8 U.S.C. § 1154(c), which has been part of the INA since 1965 and in its current form provides:

> "[N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws."

8 U.S.C. § 1154(c) (Supp.1995).[5] This provision forecloses any means of immigrating

---

5. In its original form, § 1154(c) applied only to those aliens who actually obtained a visa based on a marriage determined to be fraudulent. The Immigration Marriage Fraud Amendments of 1986, Pub.L. No. 99-639, 100 Stat. 3537, 3543, expanded this provision to include within the ban those aliens who merely attempted to obtain

a visa based upon a fraudulent marriage. *Salas–Velazquez v. Immigration & Naturalization Serv.,* 34 F.3d 705, 708 (8th Cir.1994). Because Mr. Barmo actually obtained a visa based upon his sham marriage to Ms. Lopez, the application of § 1154(c) in this case is not directly affected by

legally to the United States once the alien is deemed to have engaged in prior marriage fraud. *See Marriage, Divorce, and the Immigration Laws,* 81 Ill.B.J. at 647–648 (§ 1154(c) as amended eliminates any means of legally immigrating to U.S.); *Ghaly v. Immigration & Naturalization Serv.,* 48 F.3d 1426, 1436 (7th Cir.1995) (Posner, C.J., concurring) (under § 1154(c), alien "can never become a citizen of the United States or even reside permanently in this country."). The bar imposed by § 1154(c) "is both permanent and not waivable." Marriage Fraud Amendments Regulations, 53 Fed.Reg. 30011, 30012 (1988) (summarizing and responding to comments generated by proposed regulations to implement Immigration Marriage Fraud Amendments of 1986). *See also Salas–Velazquez v. Immigration & Naturalization Serv.,* 34 F.3d 705, 708 (8th Cir. 1994) (§ 1154(c) "appears to preclude the exercise of any discretion" by the INS to waive application of the provision).

Plaintiff contends that § 1154(c) is unconstitutional. Specifically, she asserts that this provision runs afoul of both substantive and procedural due process principles under the Fifth Amendment and that it constitutes "cruel and unusual punishment" in violation of the Eighth Amendment. I address each of these arguments in turn.

### 1. *Substantive Due Process*

Plaintiff's substantive due process challenge proceeds thus: *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), and similar cases have recognized the rights to marry and to raise a family as "fundamental" and have subjected legislation burdening such rights to the so-called "strict scrutiny" test. A statute subjected to this standard will be upheld only upon a showing that it is "closely tailored" to achieve "important" governmental interests. *Zablocki,* 434 U.S. at 388, 98 S.Ct. at 682. Section 1154(c), by perpetually barring Plaintiff's husband from permanent residence in the United States, substantially restricts her fundamental rights to marry and to raise a family, and should thus be subjected to "strict scrutiny." Because the effects of § 1154(c) are so draconian, so grossly out of proportion to the Immigration Marriage Fraud Amendments of

marriage fraud problem that was the impetus for the statute, this provision cannot but fail the "strict scrutiny" test. Section 1154, in short, cruelly and unnecessarily requires Plaintiff to choose forever between her husband and children on the one hand, and her country on the other. This dilemma, Plaintiff concludes, the constitution will not countenance.

Plaintiff's argument for "strict scrutiny" here runs head-on into the Supreme Court's decision in *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), which articulates a considerably more deferential standard of review for substantive immigration statutes, even for those affecting "fundamental" rights such as marriage. The *Fiallo* standard prohibits a court from testing or probing beneath asserted justifications for any statute amounting to a substantive immigration classification as long as the statute is supported by a "facially legitimate and *bona fide* reason." 430 U.S. at 794, 97 S.Ct. at 1479 (internal quotation omitted). *Fiallo* controls my review of § 1154(c) and demands that I uphold it.

In *Fiallo,* the Court upheld immigration provisions denying "immediate relative" status to illegitimate children whose natural fathers are United States citizens but granting that status to similarly situated children whose natural mothers are United States citizens. 430 U.S. at 798–800, 97 S.Ct. at 1481–82. One of the arguments asserted in *Fiallo* was, in essence, the very claim advanced here: the challenged statutes implicated the "fundamental" right of United States citizens in a "familial relationship" and thus should be subjected to the "strict scrutiny" test. 430 U.S. at 794, 97 S.Ct. at 1479.

Rejecting that argument, the *Fiallo* Court began by reaffirming the uniquely sovereign character of substantive immigration legislation and the commensurately limited role of the judiciary in reviewing such statutes. 430 U.S. at 792, 97 S.Ct. at 1478 ("This Court has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens.") (quoting *Oceanic Navigation Co. v. Stranahan,* 214 U.S. 320, 339,

1986.

29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909)). The Court then turned to the plaintiffs' "fundamental constitutional rights" assertion. The *Fiallo* Court analogized the situation there to that presented in *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), where the deferential "facially legitimate and *bona fide* reason" standard had been applied to review an immigration decision that squarely implicated equally "fundamental" First Amendment rights, and concluded it would subject the statutes at issue in *Fiallo* to a review that was no more exacting. 430 U.S. at 794–95, 97 S.Ct. at 1479.[6]

Under the deferential standard borrowed from *Kleindienst v. Mandel*, the *Fiallo* Court upheld the statutes before it, finding that the "perceived absence in most cases of close family ties" between illegitimate children and their fathers and the concern for proof problems in paternity determinations were "facially legitimate and *bona fide* reasons" supporting the statutory distinction between illegitimate children of citizen fathers and illegitimate children of citizen mothers. 430 U.S. at 799, 97 S.Ct. at 1481–82. Recognizing that the statutes there worked to deny "immediate relative" status to many illegitimate children who in fact shared strong family bonds with their citizen fathers by preventing any showing of such a relationship, the *Fiallo* Court declared, "[That is] admittedly the consequence[ ] of a congressional decision not to accord preferential status to this particular class of aliens, but the decision nonetheless remains one 'solely for the responsibility of the Congress and wholly outside'" the judiciary's power. 430 U.S. at 798–99, 97 S.Ct. at 1481 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 597, 72 S.Ct. 512, 522–23, 96 L.Ed. 586 (1952) (Frankfurter, J., concurring)).

The Third Circuit has not yet had occasion to apply *Fiallo* in any context. No court, moreover, has addressed *Fiallo*'s applicability to the specific provision at issue here. But courts outside this circuit have passed on the appropriate standard of review for other immigration statutes that, like § 1154(c), were claimed to burden impermissibly the fundamental rights to marry and to·raise a family, and the overwhelming majority has relied on *Fiallo*'s reasoning to uphold such statutes. Thus, virtually every court to address the question has extended *Fiallo*'s deferential standard to § 5 of the Immigration Marriage Fraud Amendments of 1986, 8 U.S.C. §§ 1154(g) & 1255(e), which imposes a two-year "exile" requirement before consideration of any petition for "immediate relative" status based on an alien-citizen marriage entered into during the pendency of proceedings to deport the alien, and has concluded that Congress' interest in deterring immigration marriage fraud is sufficient to validate that requirement. *See Azizi v. Thornburgh*, 908 F.2d 1130 (2d Cir.1990); *Anetekhai v. Immigration & Naturalization Serv.*, 876 F.2d 1218 (5th Cir.1989); *Almario v. Attorney General*, 872 F.2d 147 (6th Cir. 1989); *Gomez–Arauz v. McNary*, 746 F.Supp. 1071 (W.D.Okla.1990); *Blackwell v. Thornburgh*, 745 F.Supp. 1529 (C.D.Cal. 1989); *Minatsis v. Brown*, 713 F.Supp. 1056 (S.D.Ohio 1989); *Smith v. Immigration & Naturalization Serv.*, 684 F.Supp. 1113 (D.Mass.1988); *Stokes v. United States*, 393 F.Supp. 24 (S.D.N.Y.1975). *See also Bright v. Parra*, 919 F.2d 31 (5th Cir.1990) (adhering to earlier application of *Fiallo* as decided by *Anetekhai*).[7]

Consistent with this majority view in the context of the two-year "exile" requirement for alien-citizen marriages, I conclude that

6. In *Kleindienst v. Mandel,* the Court affirmed the denial of a visa for an alien Marxist scholar scheduled to speak in the United States even though the denial infringed upon the First Amendment rights of the United States citizens who wanted to attend the scholar's lecture. 408 U.S. at 769–70, 92 S.Ct. at 2585–86.

7. Only one reported opinion has reached a contrary result after refusing to apply *Fiallo* to this two-year "exile" provision. *See Manwani v. Immigration & Naturalization Serv.,* 736 F.Supp. 1367 (W.D.N.C.1990). And *Manwani* is of dubi-

ous authority on this point, for it relied almost entirely on an opinion of the D.C. Circuit that was withdrawn and vacated as moot after *Manwani* was decided. *See Escobar v. Immigration & Naturalization Serv.,* No. 89–5037, 1990 WL 6857 (D.C.Cir. Feb. 2, 1990) (refusing to apply *Fiallo* to two-year "exile" requirement, and holding requirement unconstitutional under balancing test for procedural provisions enunciated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)), *withdrawn pending reh'g en banc,* No. 89–5037 [896 F.2d 564] (D.C.Cir. Apr. 25, 1990), *judgment vacated,* No. 89–5037

the effect of § 1154(c) on Plaintiff's rights to marry and to raise a family does not itself preclude application of the deferential *Fiallo* standard of review to that provision. I further conclude, after applying the *Fiallo* standard, that § 1154(c) easily withstands such light scrutiny. The provision now codified at § 1154(c) is, in relevant part, substantially the same as when originally enacted almost 30 years ago as an amendment to the INA, Act of Oct. 3, 1965, Pub.L. No. 89–236, 79 Stat. 911, 915. The legislative history accompanying its original enactment is sparse, describing it only as a "prohibition against approval of a petition for an alien whose prior marriage was determined by the Attorney General to have been entered into for the purpose of evading the immigration law." S.Rep. No. 748, 89th Cong., 1st Sess. 23 (1965). This sparseness is not surprising, however, as the purpose of § 1154(c) is self evident: to punish (as much as denial of a privilege can be said to do so) and thereby also to deter immigration marriage fraud.

Surely, Congress could reasonably choose to discipline and discourage such conduct. Marriage fraud, after all, abuses both the Nation's hospitality and the rights of thousands of aliens who wait patiently in the non-preference, quota categories. *E.g.*, Rae, *Alienating Sham Marriages*, 15 Pepp.L.Rev.

at 185 (discussing "queue-jumping" made possible by sham spousal relationship). Furthermore, such fraud often exploits the trust of citizen spouses, many of whom enter the relationship with sincere matrimonial intentions only to discover they have been cruelly duped into a sham. *See* House of Representatives Debate on Immigration Marriage Fraud Amendments of 1986, 132 Cong.Rec. H8585–02 (1986) (statement of Rep. McCollum) (describing plight of citizen spouses victimized by unilateral marriage fraud).

■ Section 1154(c) addresses marriage fraud sternly, forever banning aliens engaged in sham marriages from residing permanently here. But it is nonetheless a response to a very real problem over which Congress was justifiably concerned. As such, § 1154(c) is supported by a "facially legitimate and *bona fide* reason." *Fiallo*, 430 U.S. at 794, 97 S.Ct. at 1479. Thus, because I can neither "look behind the exercise" of Congress' discretion in enacting it, nor "balanc[e] its justification against" Plaintiff's constitutional interests, I reject Plaintiff's substantive due process argument. *Id.* at 794–95, 97 S.Ct. at 1479.[8]

### 2. *Procedural Due Process*

■ Plaintiff also contends that § 1154(c) violates procedural due process because it

---

(D.C.Cir. Sept. 13, 1990), *appeal dismissed and remanded with instructions to dismiss as moot*, No. 89–5037, 1991 WL 18478 (D.C.Cir. Jan. 24, 1991). Consequently, at least one recent decision has refused to follow *Manwani* in the face of the substantial body of opposing case law. *See Gomez–Arauz v. McNary*, 746 F.Supp. 1071, 1075 (W.D.Okla.1990).

**8.** After briefing only the ill-fated "strict scrutiny" argument, Plaintiff attempted at the February 23, 1995, hearing to avoid *Fiallo's* application with the belated assertion that § 1154(c) is a "procedural" provision rather than a "substantive" one because it effectively forecloses her access to the visa petition "process." The procedural/substantive distinction can be important because *Fiallo's* deferential standard of review applies only to substantive immigration provisions. Procedural immigration provisions, by contrast, are reviewed under the more searching balancing test derived from *Mathews v. Eldrige*, which weighs the interest at stake for the individual, the risk of an erroneous deprivation of that interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than addi-

tional or different procedures. *See Azizi v. Thornburgh*, 908 F.2d 1130, 1135 (2d Cir.1990) (citing *Landon v. Plasencia*, 459 U.S. 21, 34–35, 103 S.Ct. 321, 330–31, 74 L.Ed.2d 21 (1982)).

In the immigration context as elsewhere in the law, the difference between substance and procedure has sometimes proved elusive. *See generally* Hiroshi Motomura, *The Curious Evolution of Immigration Law: Procedural Surrogates for Substantive Constitutional Rights*, 92 Colum.L.Rev. 1625, 1659–73 (1992) (discussing provisions difficult to classify as "procedural" or "substantive"). Nevertheless, this distinction is not troublesome here, for § 1154(c) is plainly a substantive provision. It imposes no particular procedure on the conferral of lawful immigrant or permanent resident status with respect to aliens previously determined to have engaged in or to have attempted marriage fraud. Rather, it absolutely and categorically denies that status to such aliens, withholding permanently the privilege of immigrating to this country from those who have demonstrated a past willingness to abuse a marriage-based preference. As a statute directly governing the grant of "immediate relative" immigrant status, § 1154(c) is at the opposite end

erects an "insuperable procedural bar" to obtaining the statutorily conferred right of "immediate relative" status triggered by an alien-citizen marriage. This argument, too, fails.

■ The right to due process attaches only where the asserted liberty interest is recognized as a protected one by the constitution or statute. *Paul v. Davis,* 424 U.S. 693, 708–09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Smith,* 684 F.Supp. at 1118. Here, Plaintiff enjoys no such protected liberty interest. Plaintiff's interest in having her alien spouse remain in the United States is not recognized within the constitution itself. *Anetekhai,* 876 F.2d at 1222 n. 5 (citing *Burrafato v. United States Dep't of State,* 523 F.2d 554, 555 (2d Cir.1975), *cert. denied,* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976)); *Azizi v. Thornburgh,* 719 F.Supp. 86, 95 (D.Conn.1989), *aff'd,* 908 F.2d 1130 (2d Cir.1990); *Smith,* 684 F.Supp. at 1118.

■ Nor is the source of a cognizable liberty interest here the statutory provision granting citizen spouses the right to petition for and receive "immediate relative" status for their alien spouses, 8 U.S.C. § 1151(b), notwithstanding Plaintiff's attempt to convert it into one. That general provision is to be read in conjunction with and subject to the more specific directive of § 1154(c), which by its terms plainly bars approval of any petition filed under § 1151(b) on behalf of an alien spouse that, like Mr. Barmo, has been determined to have previously engaged in marriage fraud. *See Ferrante v. Immigration & Naturalization Serv.,* 399 F.2d 98, 104 (6th Cir.1968) (applying § 1154(c) to uphold

revocation of alien's "immediate relative" status obtained by current citizen-spouse under § 1151(b) where alien had entered into prior fraudulent marriage before current marriage to petitioning spouse); *cf. Salas–Velazquez,* 34 F.3d at 708 (construing § 1154(c) to override more general provision codified at 8 U.S.C. § 1182(i) granting Attorney General discretion to waive application of exclusion provisions in certain fraud cases). Such a reading comports with the settled canon of statutory construction that subordinates general provisions to more specific ones, a canon fully operative in the procedural due process context. *See, e.g., Gomez v. City of Sheridan, Colo.,* 611 F.Supp. 230, 235 (D.Colo. 1985) (construing specific statutory provision extending probationary period of police officers' employment to override more general one applicable to all city employees for purposes of determining that legislative scheme did not confer on aggrieved police officer protected property interest in continued employment).

Thus, while § 1151(b) may confer on most citizen-spouses a protected liberty interest in petitioning for "immediate relative" status, *Ali v. Immigration & Naturalization Serv.,* 661 F.Supp. 1234, 1246 n. 6 (D.Mass.1986), that provision is of no assistance to the very differently situated group of citizen spouses petitioning on behalf of aliens previously determined to have engaged in marriage fraud. *See Ferrante,* 399 F.2d at 104. *Cf. Azizi,* 908 F.2d at 1134 (finding that citizen spouse who married alien after commencement of deportation proceedings enjoyed no protected interest in immediate approval of visa for alien under § 1151(b) because two-year "exile" provision effectively limited right to such approval to "class of alien spouses who marry

of the spectrum from such "procedural" provisions as those affecting only the interim rights of certain aliens during the pendency of deportation proceedings. *Compare Reno v. Flores,* —— U.S. ——, ——–——, 113 S.Ct. 1439, 1449–51, 123 L.Ed.2d 1 (1993) (analyzing in procedural terms statute limiting persons to whom minor children detained pending deportation proceedings may be released); *Fernandez–Santander v. Thornburgh,* 751 F.Supp. 1007, 1009 (D.Me.1990) (finding procedural statute that denied "aggravated felons" detained pending deportation the opportunity to demonstrate suitability for release on bond), *vacated without op.,* 930 F.2d 906 (1st Cir.1991).

Moreover, § 1154(c) is no less "substantive" merely because, by prohibiting approval of an "immediate relative" petition, it can be said to dictate the outcome of the visa petition "process." To manipulate the word "process" in this manner, as Plaintiff does, is to render every substantive classification procedural. For even the purest and most substantive classification imaginable—for example, a classification allowing completely unrestricted immigration from country X and barring absolutely all immigration from Country Y—could be said to deny those excluded by the classification access to the full panoply of immigration "procedures."

when no deportation or exclusion proceedings are pending").

Because Plaintiff enjoys no protected liberty interest here, her procedural due process claim must be rejected.

### 3. *Eighth Amendment Claim*

Finally, Plaintiff adds in her complaint a makeweight Eighth Amendment claim, contending that application of § 1154(c) to bar the application filed on behalf of Mr. Barmo constitutes "cruel and unusual punishment." This claim is meritless. First, the Eighth Amendment's protection simply does not apply to Plaintiff because, as she has not been charged with anything, there has been no adjudication of her guilt here. *See Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979) (Eighth Amendment is inappropriate basis for analyzing conditions of confinement for pretrial detainees because no adjudication of guilt has been made yet). Moreover, deportation is not punishment and therefore is "not within the purview of" the Eighth Amendment. *Stokes,* 393 F.Supp. at 32. Nor, then, is mere denial of permission to immigrate. *Cf. McLat,* 412 F.Supp. at 1027 (rejecting Eighth Amendment challenge to administrative procedures designed to ferret out sham marriages and prevent unwarranted conferral of "immediate relative" status, and observing that "deportation and exclusion" have been held to be outside protection of that amendment) (citations omitted). If deportation cannot said to be cognizable under the Eighth Amendment as "punishment" for the deported individual, *a fortiori* it gives rise to no such claim on behalf of that individual's spouse, whose suffering is purely incidental to the deportation. Accordingly, I dismiss Plaintiff's Eighth Amendment claim, too.

\*    \*    \*    \*    \*    \*

Section 1154(c) has been described as a "harsh law," *Ghaly,* 48 F.3d at 1436 (Posner, C.J., concurring), and it undoubtedly is. But it is not an unconstitutional one. It accords fully with the balance of marriage-related immigration procedures, which are "designed to discourage marriages of convenience, entered into with both eyes on the statute, and [undertaken] solely to confer the riches of preferential immigration status as a dowry."

*Stokes,* 393 F.Supp. at 32. Thus, while I am sympathetic to the dilemma Plaintiff faces under § 1154(c), I must uphold that provision.

### III. CONCLUSION

None of Plaintiff's attacks on the constitutionality of § 1154(c) can survive the present motion to dismiss. Plaintiff's substantive due process claim must be rejected because the proper standard of review is the "legitimate and *bona fide* reason" inquiry enunciated in *Fiallo,* a standard easily satisfied here given Congress' justifiable concern over the problem of marriage fraud. I also reject Plaintiff's procedural due process and Eighth Amendment claims, the former because Plaintiff has no constitutionally protected liberty interest and the latter because the deprivation suffered by application of § 1154(c), while severe, is not "punishment" within the constitutional sense. Consequently, I uphold the validity of § 1154(c) and dismiss Plaintiff's complaint. Furthermore, because I previously stayed Mr. Barmo's deportation pending resolution of Plaintiff's constitutional claims, I also vacate the stay order and allow Mr. Barmo's deportation to proceed. An appropriate order follows.